IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNNY FRANCISCO LEYBA,

       Plaintiff,

v.                                                        No. CV 20-145 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Johnny Francisco Leyba's *Motion to Reverse and/or Remand* (the "Motion"), (Doc. 22), filed August 16, 2020; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 23), filed October 14, 2020; and Mr. Leyba's *Reply in Support of Motion to Reverse and/or Remand* (the "Reply"), (Doc. 24), filed October 21, 2020.

Mr. Leyba filed applications for disability insurance benefits and supplemental security income on September 8, 2017, alleging disability beginning November 2, 2015. (Administrative Record "AR" 12). He later amended his alleged disability onset date to February 24, 2015. (AR 12). In his applications, Mr. Leyba claimed he was unable to work due to depression, anxiety, back and neck problems, seizures, blood clots, brain injury, a hernia, a brain aneurysm, and a stroke. (AR 61). Mr. Leyba's applications were denied initially on February 7, 2018, and upon reconsideration on May 21, 2018. (AR 99, 122). Mr. Leyba requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 20, 2018, before ALJ Cole Gerstner. (AR 12, 26).

At the hearing, Mr. Leyba appeared before ALJ Gerstner with his attorney Laylah Zayin and impartial Vocational Expert ("VE") Wendy P. Klamm. (AR 12). ALJ Gerstner issued his decision on March 28, 2019, finding Mr. Leyba not disabled at any time between the alleged disability onset date and the date of his decision. (AR 26). Mr. Leyba then requested review of ALJ Gerstner's decision before the Appeals Council, which was denied on January 13, 2020. (AR 1). Mr. Leyba now challenges ALJ Gerstner's March 28, 2019 decision denying his claim for disability insurance benefits and supplemental security income. *See* (Doc. 22).

Mr. Leyba, now represented by his attorney Benjamin Decker, argues in his Motion ALJ Gerstner erred in five respects: (1) he omitted the report of Dr. Yeo, a clinical neuropsychologist who examined Mr. Leyba; (2) he omitted certain limitations in adaptive functioning in Mr. Leyba's residual functional capacity ("RFC"), and failed to explain their omission; (3) he failed to properly weigh the opinions of Dr. Fleg, Mr. Leyba's treating physician; (4) he failed to properly weigh the opinions of Dr. Yoon, a state agency physician; and (5) he failed to consider Mr. Leyba's traumatic brain injury ("TBI").

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Gerstner failed to consider Dr. Yeo's report and provided no justification for doing so, the Court finds Mr. Leyba's Motion is **GRANTED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*,

373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.     Applicable Law and Sequential Evaluation Process

A claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2019). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2019).

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1. (2019); or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.  Background

In his application, Mr. Leyba claimed he was unable to work due to depression, anxiety, back and neck problems, seizures, blood clots, brain injury, a hernia, a brain aneurysm, and a stroke. (AR 61). At step one, ALJ Gerstner determined Mr. Leyba had not engaged in substantial gainful activity from February 24, 2015, the alleged disability onset date, through December 31, 2015, his date last insured, or indeed, through the date of the decision. (AR 15). At step two, ALJ Gerstner found Mr. Leyba has the following severe impairments: degenerative disc disease of the lumbar spine; somatosensory seizures; transient ischemic attack; depressive disorder; posttraumatic stress disorder; general anxiety disorder; and alcohol abuse disorder. (AR 15).

At step three, ALJ Gerstner determined Mr. Leyba's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926. (AR 15). ALJ Gerstner then found that Mr. Leyba had the RFC to perform "light work." (AR 18). In

addition, ALJ Gerstner found Mr. Leyba was restricted to occasionally lifting, carrying, pushing or pulling twenty pounds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; occasionally working in dust, odors, and pulmonary irritants; and occasionally interacting with supervisors, coworkers, and the general public. (AR 18). Finally, ALJ Gerstner found Mr. Leyba could not climb ladders, ropes, or scaffolds, and could not work at unprotected heights or around moving mechanical parts. (AR 18).

In formulating Mr. Leyba's RFC, ALJ Gerstner stated he considered Mr. Leyba's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929, and Social Security Ruling ("SSR") 16-3p. (AR 18). ALJ Gerstner stated he also considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. (AR 18). ALJ Gerstner concluded that while Mr. Leyba's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Leyba described were not entirely consistent with the evidence in the record. (AR 19).

In evaluating the evidence, ALJ Gerstner found the opinions of the state agency physicians "persuasive," with the exception of Dr. Yoon's opinion regarding manual dexterity. (AR 22-23). Specifically, ALJ Gerstner found Dr. Yoon's assessment of Mr. Leyba's limitation on reaching, handling, feeling, grasping, and fingering to be inconsistent with the medical evidence, and thus "unpersuasive." (AR 23). ALJ Gerstner found the opinion of Dr. Fleg, Mr. Leyba's treating physician, to be persuasive regarding mental limitations, because the opinion was consistent with the medical evidence. (AR

23). However, with regard to Mr. Leyba's physical limitations, ALJ Gerstner found Dr. Fleg's opinion to be unpersuasive, because it was inconsistent with the medical evidence and with observations of treating sources. (AR 23). ALJ Gerstner did not mention the report of Dr. Yeo, a clinical neuropsychologist who examined Mr. Leyba, in his decision at all. (AR 23).

At step four, ALJ Gerstner found Mr. Leyba was unable to perform any past relevant work as a construction superintendent or a drywall installer, because the exertional demands of those jobs as actually and generally performed exceeded Mr. Leyba's RFC. (AR 24). At step five, ALJ Gerstner explained that Mr. Leyba is "a younger individual," has a limited education, and can communicate in English. (AR 24). Relying on the VE's testimony, ALJ Gerstner found, considering Mr. Leyba's age, education, work experience, and assessed RFC, he could perform the requirements of representative occupations such as housekeeping cleaner, price marker, or router. (AR 25). After finding that Mr. Leyba was able to perform other work existing in significant numbers in the national economy, ALJ Gerstner concluded he was "not disabled" as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 26).

**IV.   Analysis**

Mr. Leyba presents five arguments in his Motion before the Court. *See* (Doc. 22). First, Mr. Leyba claims ALJ Gerstner failed to consider Dr. Yeo's report. (Doc. 22 at 21). Second, Mr. Leyba contends ALJ Gerstner omitted certain limitations in adaptive functioning in the RFC, and failed to explain that omission. *Id.* at 23. Third, according to Mr. Leyba, ALJ Gerstner failed to properly consider Dr. Fleg's opinions. *Id.* Fourth, Mr. Leyba contends ALJ Gerstner failed to properly consider Dr. Yoon's opinions. *Id.* at 24.

7

Fifth, Mr. Leyba states ALJ Gerstner failed to consider his TBI at all. *Id.*

In response, the Commissioner argues that the ALJ's failure to consider Dr. Yeo's opinion is harmless error because Dr. Yeo's opinion does not detract from the substantial evidence supporting the ALJ's decision, and is consistent with ALJ Gerstner's mental RFC finding. (Doc. 23 at 8-9). Next, the Commissioner contends that the ALJ was not required to include "moderate limitations in adaptive functioning" verbatim, and that ALJ Gerstner did include limitations in the RFC finding to account for Mr. Leyba's moderate limitation in adapting and managing himself. *Id.* at 10. Further, the Commissioner asserts that ALJ Gerstner reasonably found Dr. Yoon's and Dr. Fleg's opinions unpersuasive, as they were inconsistent with other evidence of record. *Id.* at 8. Finally, the Commissioner asserts ALJ Gerstner addressed Mr. Leyba's traumatic brain injury by discussing his concussion, his aneurysm, and his lingering limitations which stemmed from both his head injury and post-surgery vascular incidents. *Id.* at 11.

### A. The ALJ's Omission of Dr. Yeo's Report

Mr. Leyba alleges ALJ Gerstner completely failed to consider Dr. Yeo's report, in contravention of Social Security regulations and case law. (Doc. 22 at 21). According to Mr. Leyba, Dr. Yeo performed an extensive neuropsychological examination, interviewed Mr. Leyba at length, obtained a detailed medical history, and reviewed his medical records. *Id.* at 22. Mr. Leyba also notes that Dr. Yeo made behavior observations during the examination, and administered fifteen different tests. *Id.* Dr. Yeo then documented the test results, the conclusions he drew based on those tests, and his general observations, in a report. *Id.*; *see also* (AR 872-880). Mr. Leyba contends

8

that ALJ Gerstner's failure to consider Dr. Yeo's report constitutes harmful legal error because had the ALJ considered Dr. Yeo's report, he may have found limitations in handling, fingering, reaching, memory, and concentration in Mr. Leyba's RFC. (Doc. 22 at 22); (Doc. 24 at 1-3). Mr. Leyba further argues that had ALJ Gerstner considered Dr. Yeo's report, the report may have altered the weight ALJ Gerstner afforded the other medical opinions in the record. (Doc. 22 at 22-23).

In response, the Commissioner acknowledges that ALJ Gerstner omitted Dr. Yeo's report, but contends that even had he considered it, the report was consistent with ALJ Gerstner's mental RFC finding and did not otherwise "detract from the substantial evidence supporting the [ALJ's] finding." (Doc 23 at 9-10). Moreover, the Commissioner argues that, despite Mr. Leyba's assertions, Dr. Yeo "did not opine that Plaintiff had limitations in reaching, handling, feeling, or fingering," and that he found Mr. Leyba's performance in manual dexterity, grip, and finger tapping was only "somewhat inconsistent" and only "slightly below expectation." *Id.* at 9. In his Reply, Mr. Leyba counters the Commissioner's argument of harmless error, contending that, had ALJ Gerstner considered Dr. Yeo's report, the outcome would have been different. (Doc. 24 at 1).

Although ALJs need not discuss every piece of evidence, they are required to evaluate every medical opinion in the record and explain how much weight is assigned to each opinion and why. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); SSR 96-6p, 1996 WL 374180, SSR 96-5p 1996 WL 374183 at *5. In doing so, the ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship,

9

including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d), 416.927(c)-(d). In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports his conclusion. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Threet*, 353 F.3d at 1190.

A medical opinion is defined as "statements from acceptable medical sources that reflect judgment about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Conversely, medical assessments that "go beyond purely medical findings to reach 'issues reserved to the Commissioner'—such as the claimant's RFC . . . and the ultimate question of disability—'are not medical opinions.'" *Lakey v. Barnhart*, No. 04-7041, 127 Fed. Appx. 455, 457 (10th Cir. April 5, 2005) (unpublished) (citing 20 C.F.R. § 404.1527(e)). Indeed, "the agency will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* (internal citations omitted).

In this case, the parties do not dispute that the findings and conclusions in Dr. Yeo's report constitute medical opinions. *See generally* (Doc. 22); (Doc. 23). In particular, Dr. Yeo's report contains notes and observations from his interview and

examination of Mr. Leyba on December 15, 2015, the tests he administered, and his review of Mr. Leyba's medical records and medical history. *See generally* (AR 872-880). Dr. Yeo found that Mr. Leyba had below-average grip strength in his right hand, and suffered mild impairment to his right hand, reflected in the finger tapping test. (AR 877-878). He further found that Mr. Leyba suffered below-average manual dexterity and motor speed in his left hand, reflected in the finger tapping test. (AR 877-878). Dr. Yeo opined that Mr. Leyba experienced difficulty performing operations based on auditory information, and orienting on new and demanding tasks. (AR 875). Dr. Yeo concluded that Mr. Leyba experienced difficulty with complex attention and mental tasks, verbal and nonverbal memory, and that his motor skills ranged from low-average to average. (AR 878-879).

In the Court's own examination, Dr. Yeo's opinions are indeed medical opinions. As such, ALJ Gerstner was required to weigh Dr. Yeo's report accordingly. *See*, *e.g.*, *Chavez v. Saul*, 1:19-cv-1208, 2020 WL 5255274, *5-6 (finding statements in a medical report to constitute medical opinions, and thus requiring the ALJ to weigh them accordingly). ALJ Gerstner's failure to do so constitutes error. The issue the Court must consider next is whether such error was harmful, mandating reversal and remand.

### B. Whether Omitting Dr. Yeo's Report was Harmful Error

Mr. Leyba contends that ALJ Gerstner's failure to consider Dr. Yeo's report constitutes harmful legal error because had the ALJ considered Dr. Yeo's report, (1) he may have found additional limitations in Mr. Leyba's RFC, and (2) he may have altered the weight he afforded other medical opinions in the record. (Doc. 22 at 21); (Doc. 24 at 1). The Commissioner does not deny that ALJ Gerstner failed to consider Dr. Yeo's

11

neuropsychological evaluation, but argues merely that Mr. Leyba has failed to "demonstrate that such evidence detracts from the substantial evidence supporting the judge's decision." (Doc. 23 at 8-9). The Commissioner argues that Dr. Yeo did not specifically opine that Mr. Leyba had "limitations in reaching, handling, feeling, or fingering," and argues that the omission of Dr. Yeo's report does not detract from the substantial evidence supporting ALJ Gerstner's decision. *Id.*

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

Here, however, several statements in Dr. Yeo's report may have altered ALJ Gerstner's RFC analysis. When Dr. Yeo examined Mr. Leyba, he found that Mr. Leyba had below-average grip strength in his right hand, and suffered mild impairment to his right hand, reflected in the finger tapping test. (AR 877-878). He also found that Mr. Leyba suffered below-average manual dexterity and motor speed in his left hand, reflected in the finger tapping test. (AR 877-878). However, ALJ Gerstner's RFC

12

findings contain no manipulative limitations. *See* (AR 18). Dr. Yeo's findings regarding Mr. Leyba's manipulative limitations may have altered ALJ Gerstner's RFC analysis, had he considered Dr. Yeo's report.

Further, Dr. Yeo opined that Mr. Leyba experiences difficulty performing operations based on auditory information, and orienting on new and demanding tasks. (AR 875). Dr. Yeo's opinion that Mr. Leyba cannot manage his own medical and psychosocial needs, as well as his suggestion that Mr. Leyba's case is appropriate for a medical case manager, bears directly on Mr. Leyba's ability to maintain regular attendance at work. (AR 894). The Commissioner does not address this issue, or Dr. Yeo's recommendation that Mr. Leyba would benefit from case management, at all. *See* (Doc. 23). These opinions, had ALJ Gerstner considered them, may have altered his analysis of Mr. Leyba's mental limitations in the RFC determination.

Moreover, ALJ Gerstner's consideration of the other medical source opinions may also have been different had he considered Dr. Yeo's opinion. For instance, ALJ Gerstner found Dr. Yoon's assessment of Mr. Leyba's limitation on reaching, handling, feeling, grasping and fingering to be unpersuasive, as it was not consistent with the medical evidence. (AR 23). This, however, appears consistent with Dr. Yeo's opinions regarding Mr. Leyba's manual dexterity limitations. (AR 877-878). Dr. Yeo's opinions also appear consistent with Dr. Fleg's opinion on Mr. Leyba's physical limitations. Dr. Fleg opined that Mr. Leyba can only use his hands, fingers and arms for grasping, fine manipulation, and reaching up to fifty percent of the time. (AR 992). Yet, ALJ Gerstner found Dr. Fleg's opinion in this regard to be "unpersuasive," because it was inconsistent with the medical evidence and with observations of treating sources. (AR 23). ALJ

13

Gerstner may have found otherwise had he considered Dr. Yeo's opinions regarding Mr. Leyba's physical limitations.

Finally, ALJ Gerstner's consideration of Mr. Leyba's self-reported complaints may also have changed in light of Dr. Yeo's opinion. Dr. Yeo's opinion is consistent with Mr. Leyba's testimony that his right hand goes numb with extremely slight pressure, such as leaning his arm on a table. (AR 53). It is also consistent with Mr. Leyba's testimony that he drops things, that he has broken half of a new set of dishes that way, that he burns himself, cuts himself, and gets splinters, and that he does not feel pain or other sensation such that he only way he detects the injury is by noticing blood on his hands. (AR 53-54). Indeed, Mr. Leyba also testified that his "most serious problem" is his hands, and that "it seems like every time" he works with his hands now, he gets hurt. (AR 42).

Given the foregoing, a reasonable factfinder could conclude, for instance, that Mr. Leyba's manual dexterity and ability to be punctual and present in the workplace were subject to limitations. *See Howard*, 379 F.3d at 947; *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-65 (10th Cir. 2012) (holding that the ALJ's failure to weigh medical opinions was harmless since the medical opinions in the record on the claimant's ability to work were consistent with the RFC finding). Mr. Leyba's manual dexterity is part of his RFC. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b). Mr. Leyba's capacity for attendance is also part of his RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E3; *see also Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). The extent to which Mr. Leyba can work, and the ultimate question of disability, must be determined in light of that restriction. *See*

SSR 85-16, 1985 WL 56855, at *2.

Dr. Yeo's report is not only a medical opinion requiring ALJ Gerstner's consideration, but also significant, probative evidence ALJ Gerstner was required to discuss in order for substantial evidence to support his findings. *See Clifton*, 79 F.3d at 1009-10 (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (internal citation omitted). ALJ Gerstner's failure to discuss Dr. Yeo's report leaves the Court with no guidance to perform a meaningful review of ALJ Gerstner's analysis of (1) Mr. Leyba's physical and mental limitations in the context of his RFC, (2) the proper weight to afford the opinions of the other medical sources on Mr. Leyba's limitations, or (3) Mr. Leyba's own self-reports of his limitations.

Therefore, the ALJ Gerstner's failure to discuss Dr. Yeo's report, even merely to explain why he found it unpersuasive, constitutes harmful and reversible error. *Ledford v. Barnhart*, No. 05-7111, 197 Fed. Appx. 808, 811 (10th Cir. Oct. 19, 2006) (unpublished) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (internal citations omitted). The Court thus finds that remand is appropriate.

### V.    Conclusion

For the foregoing reasons, the Court finds the ALJ's failure to consider Dr. Yeo's report is harmful error meriting remand. Because the Court finds this is a harmful error, the Court will not address Mr. Leyba's remaining arguments.

**IT IS THEREFORE ORDERED** that Mr. Leyba's *Motion to Reverse or Remand Decision of Administrative Law Judge*, (Doc. 22), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE